Whalen, J.
(dissenting). I respectfully dissent because, in my view, plaintiff is precluded as a matter of law from bringing this legal malpractice action based upon his voluntary discontinuance of the underlying federal action and failure to pursue a nonfrivolous appeal. It is important to note that, if plaintiff had been successful in his appeal in the underlying federal action, we would not have a subsequent legal malpractice case.
In the underlying federal medical malpractice case, defendants failed to name a certain physician as a defendant, which is the basis of the subsequent legal malpractice claim. Defendants’ contention is that the physician was a government employee and thus was not required to be named individually as a defendant because the government was already a party. The federal trial court determined that the physician was an independent contractor, not a government employee. I conclude that defendants would have had a meritorious argument had plaintiff taken an appeal from the federal order based upon case law supporting defendants’ position that the physician was a government employee as opposed to an independent contractor. Federal courts have employed the “control test” to determine if an individual or other entity equitably should be considered an “employee” of the federal government for purposes of the Federal Tort Claims Act ([FTCA] 28 USC § 2671 et seq.) because the FTCA waives sovereign immunity for the torts of employees of the government but not for those of its independent contractors (see United States v Orleans, 425 US 807, 813-814 [1976]). “[I]t is well settled that the question whether one is an employee of the United States is to be determined by federal law” (Lurch v United States, 719 F2d 333, 337 [10th Cir 1983], cert denied 466 US 927 [1984]). Courts look to factors such as which entity determined the amount of the individual’s salary, who actually paid that sum, whether the government exercised day-to-day *1178 control over the individual, what entity determined the individual’s work hours and provided for vacation leave, whether the government had the authority to review the individual’s performance and any other factors relating to the government’s exercise of control over the individual’s work (see Leone v United States, 910 F2d 46, 50 [2d Cir 1990], cert denied 499 US 905 [1991]; see also Tivoli v United States, 1996 WL 1056005, *3-5, 1996 US Dist LEXIS 22317, *8-14 [SD NY 1996], affd 164 F3d 619 [2d Cir 1998]; Lurch, 719 F2d at 336-337 [reciting test and determining that the individual was an independent contractor based on the contract itself]).
In Tivoli, physicians employed by Georgetown University (Georgetown) worked full-time at the National Institutes of Health (NIH) (1996 WL 1056005, *3, 1996 US Dist LEXIS 22317, *11). The contract specified the names of the physicians who would serve as “key personnel,” and the government had to approve those key personnel so that it could ensure quality physicians (id.). Georgetown had no supervision over any of the physician’s day-to-day activities (id.). The NIH set forth by contract the hours that the physicians worked and provided all medical equipment and facilities necessary for the physicians to complete their work (id.). In fact, the only factor demonstrating that the physicians were Georgetown employees was that they received their salaries from Georgetown (1996 WL 1056005, *4, 1996 US Dist LEXIS 22317, *12). The District Court found, based on the various factors, that the physicians were under the control, direction and supervision of the government and thus were employees of the government despite language to the contrary in the contract. In the case before us now, the physician was mentioned by name in the contract but it is unclear whether this was because the Veterans Administration (VA) requested her specifically or because the University of Rochester designated her as an available physician for the VA. Had the VA specifically designated the physician, that would be evidence of its having exercised control and could weigh in favor of a finding that she was an employee of the VA.
In Williams v United States (2007 WL 951382, 2007 US Dist LEXIS 25240 [SD NY 2007]), the District Court initially noted that, although the contract declared that the physician was not to be considered a government employee for any reason, the court was not bound by the language of the contract in determining whether the physician was a government employee for purposes of the FTCA (see 2007 WL 951382, *10, 2007 US Dist LEXIS 25240, *35). The court found that the physician, by contract, was to “ ‘be under the direction of the Chief [of Bronx *1179 VA]’ ” and was required to provide his services “ ‘in accordance with VA policies and procedures,’ ” and that “ ‘personnel assignments [by the contracting entity] were subject to the approval of the Bronx VA Chief of Staff’ ” (2007 WL 951382, *11, 2007 US Dist LEXIS 25240, *39-40). Finally, the court noted that the government “controlled not only [the physician’s] work hours and vacation time . . . , but where he worked, who he saw, and what he did during those hours” (2007 WL 951382, *12, 2007 US Dist LEXIS 25240, *40). In denying the government’s motion for summary judgment dismissing the complaint, the court determined that “a reasonable factfinder could conclude that [the physician] qualifie[d] under the FTCA as an ‘employee’ of the Bronx VA” (2007 WL 951382, *12, 2007 US Dist LEXIS 25240, *42-43). In the case now before us, the physician was required to work at the VA Outpatient Clinic six days per month. Additionally, other physicians could only be substituted for the named physician in the event that she became permanently or temporarily unavailable due to vacation, illness, emergencies or termination of employment. That is additional evidence weighing in favor of classifying the physician as an employee of the VA.
The federal court in the underlying medical malpractice action herein found that, “[w]hile the fact that the VA provided the place of work, as well as the tools, for the most part, weighs in favor of finding that [the physician] was the VA’s agent,” consideration of all of the other factors favored a finding that the physician was an independent contractor. An appellate court could disagree with the District Court’s weighing of the various factors regarding whether the physician was a government employee. Inasmuch as plaintiffs theoretical appeal to the Second Circuit would have been before a panel for de novo review of whether there was a “genuine factual dispute” for resolution by a jury, plaintiff may have succeeded on appeal in at least a reversal of defendants’ respective motions for summary judgment (Vermont Teddy Bear Co., Inc. v 1-800 Beargram Co., 373 F3d 241, 244 [2004]). Thus, plaintiffs decision to direct defendants to discontinue the federal action precluded defendants from being vindicated should the appeal have resulted in reversal.
We have held that a plaintiff in a legal malpractice action waived his right to raise certain allegations of malpractice in the context of a matrimonial action based upon his execution of a settlement agreement (Rupert v Gates & Adams, P.C., 83 AD3d 1393 [2011]). We concluded there that Supreme Court “did not err in granting defendants’ motion concerning those alleged er *1180 rors because they could have been corrected on an appeal from the final judgment in the matrimonial action, and plaintiff consented to the dismissal on the merits of any appeal in the matrimonial action as part of the global settlement resolving a bankruptcy proceeding in which he was involved. In doing so, plaintiff precluded pursuit of the very means by which defendants’ representation of plaintiff in the matrimonial action could have been vindicated” (id. at 1396).
Our decision in Rupert was based upon sound policy and should be applied here for various reasons, the first being judicial economy. The majority is concerned that forcing a party to pursue a potentially meritless appeal will result in increased costs of litigation and overburdening the court system. As stated previously, I do not view the appeal as meritless here. I believe that allowing a plaintiff to discontinue his or her underlying case in order to pursue a legal malpractice action will result in the increased litigation costs and overburdening of the court system that the majority seeks to avoid. A legal malpractice case requires commencing a separate action that not only involves litigating the legal malpractice action but also involves litigating the underlying action. This may result in additional expert witnesses being called and a more lengthy discovery process because the parties are beginning the litigation of essentially two separate cases in state court as opposed to one in federal court. Importantly, the parties will have to litigate the very issue that would have been decided on appeal in the underlying action in order to resolve the legal malpractice case. This will obviously result in additional costs, attorney fees and use of court resources. However, should a litigant have to pursue an appeal that may correct a potentially erroneous trial court decision in the underlying litigation, a subsequent legal malpractice case may be avoided, thus saving costs and the use of court resources.
Additionally, allowing a litigant to choose to forego the appeal process and commence a legal malpractice action against his or her attorney allows the litigant to select a new defendant that he or she may feel is an easier target before a jury than a physician or hospital would be. I cannot see the merit in allowing a litigant, who does not give his or her attorney an opportunity to pursue a potentially meritorious appeal, to abandon his or her underlying case as a strategic decision in order to pursue a legal malpractice claim against his or her attorney. The appellate review of disputed issues is an integral part of our judicial system, allowing for review, contemplation and determination of cases by a panel of justices or judges as opposed to a single one. *1181 Requiring the litigant to seek final determination of the disputed issue through the appellate process should not be looked upon as onerous, as argued by plaintiff.
I also disagree with the majority that the additional time spent pursuing an appeal could result in the expiration of the statute of limitations on a legal malpractice claim. That issue is easily remedied. Nothing prevents plaintiff from commencing a separate malpractice action that may be stayed until the resolution of the underlying action, which includes resolution of any issues on appeal. Second, plaintiff may also obtain a waiver of the statute of limitations from defendants so that a subsequent legal malpractice action would not be time-barred.
I also disagree with the majority that requiring plaintiff to exhaust his appellate remedies interferes with settlement and potentially conflicts with an injured party’s duty to mitigate damages. It is speculative to assume that a certain litigation posture will interfere with settlement over another litigation posture. Who is to say that a case is more difficult to settle when there are outstanding appellate issues that may result in the reversal of the trial court’s decision versus when there is a legal malpractice case that must resolve both legal malpractice issues and medical malpractice issues, as well as appellate issues. One may easily conclude that the latter interferes more with settlement than the former. I also disagree with the majority that plaintiffs pursuit of an appeal here conflicts with his duty to mitigate damages. The proper way to mitigate damages in this case would have been for plaintiff to pursue his appeal and also to continue to litigate his remaining cause of action, which may have resulted in an award of some or all of his damages. In the event that he recovered all of his damages, a subsequent legal malpractice case would be unnecessary. In the event that he recovered partial damages, the issues and damages recoverable in a subsequent legal malpractice case would be limited. Plaintiff violated his duty to mitigate by discontinuing his remaining cause of action and foregoing his appeal in the underlying action.
I therefore would reverse the order insofar as appealed from and grant defendants’ motion and cross motion for summary judgment seeking dismissal of the complaint. Present — Scudder, PJ., Peradotto, Lindley, Sconiers and Whalen, JJ.